IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NYKA O'CONNOR,
    Plaintiff,

vs.                                  Case No.: 3:09cv143/MCR/EMT

M.L. CARNAHAN,
    Defendant.
_____/

**ORDER, REPORT AND RECOMMENDATION**

      Plaintiff, an inmate of the Florida Department of Corrections (DOC) proceeding pro se, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 and a motion for leave to proceed in forma pauperis (*see* Docs. 1, 2). Plaintiff subsequently filed a motion for appointment of counsel, motion for preliminary injunction, motion for leave to file an amended complaint, and an amended complaint (Docs. 4, 5, 6, 7). The undersigned has considered the allegations in Plaintiff's amended complaint (Doc. 7), and concludes that this action should be dismissed.

      Plaintiff, an inmate of Santa Rosa Correctional Institution (SRCI), names seventeen Defendants in this action: five individuals employed in the mail room at SRCI, a grievance coordinator at SRCI, the warden of SRCI, four past and present assistant wardens of SRCI, four individuals employed at the central office of the DOC, a member of the literature review committee, and general counsel for the DOC (Doc. 7 at 1–2). Plaintiff states that prison officials at SRCI and the DOC violated his First Amendment and due process rights by treating his "UCC related materials" as routine mail instead of legal mail and opening and inspecting it outside his presence, returning some of these materials to the sender, confiscating some of the materials, denying him access to UCC law books, and prohibiting him from receiving a UCC-related publication titled "The

American's Bulletin" (*id.* at 20).[1]  He additionally claims Defendants violated his Eighth Amendment and due process rights by retaliating against him, searching his cell for UCC materials on several occasions, leaving his cell in disarray, damaging his personal property, threatening to assault him, physically assaulting him, failing to provide medical and mental health attention, writing false disciplinary reports, tampering with his food, and placing him on a more restrictive custody status without due process (*id.*).

Plaintiff alleges the following facts in support of his claims.  During his incarceration at SRCI in 2005, prison officials refused to recognize his correspondence with Ms. Eileen Lawrence, a "paralegal/notary public/POA" doing business as "OMEGA-17," as legal mail, even though the correspondence concerned UCC-related issues regarding his conviction (*id.* at 5, 9–12).  As a result, Plaintiff was required to provide his outgoing correspondence to Ms. Lawrence to prison officials in unsealed envelopes, his incoming correspondence from her was opened outside his presence and inspected, some of the correspondence and enclosed materials were confiscated, and some of it was returned to Ms. Lawrence (*id.* at 9–11).  Plaintiff states DOC officials in the central office condoned these practices, as did the general counsel of the DOC (*id.* at 11).

Plaintiff states that since that time, he has been transferred to other correctional institutions, where prison officials recognized his correspondence with Ms. Lawrence as legal mail (*id.* at 5). Plaintiff states that on June 2, 2008, while he was housed at Union Correctional Institution (Union C.I.), he wrote a letter to the Secretary of the DOC, the Governor of the State of Florida, and a representative of the Department of Justice regarding several instances of harassment and "brutalization" of himself and other inmates with mental health issues at Union C.I. (*id.* at 6). Plaintiff states that the DOC's general counsel falsely characterized the letter as relating to a fraudulent UCC scheme and directed Plaintiff's classification officer to write a disciplinary report against him for sending the letter (*id.* at 6, 11, Ex. G).  Plaintiff states he was transferred from Union C.I. to SRCI, and on the day he arrived at SRCI, DOC officials directed prison officials to search his cell (*id.* at 6–7, 11–12).  Plaintiff states that during the search, officials scattered his personal property throughout his cell and destroyed his UCC materials (*id.*).  Plaintiff wrote a grievance

---

[1]Plaintiff's use of the abbreviation "UCC" refers to the Uniform Commercial Code.

regarding the incident, but he received a disciplinary report for threats against staff and was placed on "heightened security status" without a hearing or due process (*id.* at 7, 12).

Plaintiff alleges the staff in the mail room at SRCI have again refused to recognize his correspondence with Ms. Lawrence as legal mail, and the staff refuses to recognize his UCC-related correspondence with state courts, the United States Department of the Treasury, and state bar associations as legal mail; therefore, it is opened outside his presence and inspected (id. at 5–7, 12, 15–17). He additionally states that he is prohibited from receiving UCC-related materials and books from Ms. Lawrence (*id.*). Plaintiff also states prison officials have searched his cell for UCC-related materials and confiscated the materials that they found (*id.* at 7, 14). Plaintiff states the Assistant Warden, in concert with the DOC literature review committee, prohibited him from receiving any UCC-related materials, including a publication titled "The American's Bulletin" (*id.* at 7, 12–14). Plaintiff also states officer "L.H.B." returned UCC-related documents sent to Plaintiff by "Erickson & Erickson" without disclosing the sender's address to Plaintiff, thereby preventing him from corresponding with the sender (*id.* at 17). Plaintiff states supervisory officials are aware of the above-described conduct and encourage it (*id.* at 14–18).

Plaintiff additionally alleges that on February 19, 2009, his cell was searched, and officials damaged his personal property, including UCC books, papers, transcripts, motions, and "esoteric books," and an unidentified officer advised him to stop filing lawsuits and stop hurting his fellow officers (*id.* at 8, 18). Plaintiff states he was then assaulted by a sergeant who was a member of the team that searched his cell, but an incident report was not written regarding the incident, and he did not receive medical treatment for his bruised, swollen, aching arm (*id.*). Plaintiff states he declared a psychological emergency, but before he completed his mental health treatment plan, his psychologist, Dr. Miller, diagnosed him as "cured" (*id.*). Plaintiff states he was moved into a cell with another inmate despite the fact that he has been in a single cell since 2005 and has been on mental health medication since 2006 (*id.*). Plaintiff states he wrote several grievances about this, but nothing has been done (*id.*).

Plaintiff additionally states that on March 26, 2009, Sergeant Jones harassed him and threatened to physically harm him, spray him with a chemical agent, tamper with his food, and take his UCC materials while he was out of his cell (*id.* at 9, 18–19). Plaintiff states he did not eat lunch

that day because his food had been tampered with (*id.* at 9). The same day, Plaintiff was advised by his classification officer that a review of his custody status would soon be held which would possibly result in a downgrade of his custody status from Close Management II to Close Management III (*id.*). Plaintiff states that within minutes of his conversation with the classification officer, Sergeant Jones told Plaintiff that his custody status would not be downgraded, and Jones wrote a false disciplinary report against Plaintiff to keep him on Close Management II or have his status upgraded to Close Management I (*id.*).

As previously discussed, Plaintiff claims the afore-described conduct by prison officials violated his First and Eighth Amendment rights and his due process rights (*id.* at 20). As relief, he seeks a declaratory judgment and compensatory, punitive, and nominal damages (*id.*). He also seeks an injunction requiring Defendants to return his confiscated UCC-related materials (*id.*).

Pursuant to the "three strikes" provision:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The court takes judicial notice that as of the date Plaintiff filed the instant action,[2] he previously filed the following three cases in the federal courts: (1) O'Connor v. State of Florida, et al., Case No. 3:06cv10RV/MD (N.D. Fla. Mar. 29, 2006); O'Connor v. State of Florida, et al., Case No. 3:06cv45/RV/EMT (N.D. Fla. Sept. 22, 2006), and O'Connor v. FDOC, et al., No. 3:08cv357/LAC/EMT (N.D. Fla. Feb. 20, 2009).[3] Plaintiff was incarcerated at the time of filing each of those cases, as his address of record was a penal institution. Additionally, each case was dismissed by the district court on the ground that it failed to state a claim upon which relief may be

---

[2] The date of filing of the complaint in this case is March 30, 2009, as indicated by the institutional stamp, initialed by Plaintiff, stating that the complaint was provided to prison officials for mailing on that date (*see* Doc. 1 at 1).

[3] The inmate number of the plaintiffs in these cases, #199579, is the same as Plaintiff's inmate number (*see* Doc. 2 at 1).

granted.  *See* O'Connor v. State of Florida, et al., Case No. 3:06cv10/RV/MD (N.D. Fla. Mar. 29, 2006) (dismissing section 1983 action for failure to state a claim); O'Connor v. State of Florida, et al., Case No. 3:06cv45/RV/EMT (N.D. Fla. Sept. 22, 2006) (dismissing section 1983 action for failure to state a claim); O'Connor v. FDOC, et al., No. 3:08cv357/LAC/EMT (N.D. Fla. Feb. 20, 2009) (dismissing section 1983 action for failure to state a claim).

In the instant case, Plaintiff is clearly still a prisoner, and the instant civil rights action concerns the conditions of his confinement.  Furthermore, his three prior cases, identified *supra*, qualify as "strikes" under § 1915(g).  Therefore, Plaintiff may not proceed in forma pauperis unless he qualifies under the "imminent danger of serious physical injury" exception.

Circuit court cases have been helpful in determining what a prisoner with three strikes must show in order to be allowed to proceed in forma pauperis.  According to the Eleventh Circuit, in Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004), "the issue is whether [the] complaint, as a whole, alleges imminent danger of serious physical injury."  Accordingly, when determining whether a plaintiff has met his burden of proving that he is in imminent danger of serious physical injury, the court must look to the complaint, which must be construed liberally and the allegations of which must be accepted as true.  *See id.*; Jackson v. Reese, 608 F.2d 159, 160 (5th Cir. 1979); McAlphin v. Toney, 281 F.3d 709, 710 (8th Cir. 2002). General allegations that are not grounded in specific facts which indicate that serious physical injury is imminent are not sufficient to invoke the exception to § 1915(g).  Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003).  The plaintiff must allege and provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury," *id.*, and vague allegations of harm and unspecific references to injury are insufficient.  White v. State of Colorado, 157 F.3d 1226, 1231 (10th Cir. 1998).  A claim by a prisoner that he faced a past imminent danger is an insufficient basis to allow him to proceed in forma pauperis pursuant to the imminent danger exception.  Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (holding that exception not triggered where threat of assault by other prisoners ceased to exist when plaintiff was placed in administrative confinement prior to filing of his complaint); *see also* Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002) (holding that "imminent danger" exception to § 1915(g)'s "three strikes" rule is construed narrowly and available only "for genuine emergencies," where "time is pressing"

and "a threat . . . is real and proximate."). Moreover, "imminent danger" is assessed not at the time of the alleged incident, but rather at the time the complaint is filed. *See* Abdul-Akbar v. McKelvie, 239 F.3d 307, 213 (3d Cir. 2001).

In the instant case, the facts alleged by Plaintiff do not show that he is suffering ongoing serious physical injury, nor do they allege a likelihood of imminent serious physical injury. The alleged refusal to recognize Plaintiff's UCC-related mail as "legal" mail, the confiscation of such mail and UCC-related materials, the prohibition on his receiving UCC-related books and newspapers, the searching of his cell, and the destruction of some of his personal property do not pose a risk of any physical injury. Furthermore, although Plaintiff alleges he was physically assaulted by an unidentified officer on February 19, 2009, and he suffered a bruised, swollen, and aching arm as a result, this incident occurred over one month prior to the filing of the instant lawsuit, and the physical injury described by Plaintiff does not rise to the level of "serious." Moreover, none of the conduct described by Plaintiff in his amended complaint suggests a likelihood that serious physical injury is imminent. Because the facts do not suggest that Plaintiff's current conditions of confinement pose an imminent threat of serious physical injury, he does qualify under the imminent danger exception to § 1915(g). Accordingly, he may not proceed in forma pauperis. A prisoner who is no longer entitled to proceed in forma pauperis must pay the filing fee at the time he initiates the suit, and failure to do so warrants dismissal without prejudice. Dupree v. Palmer, 284 F.3d 1234 (11th Cir. 2002); Vanderberg v. Donaldson, 259 F.3d 1321, 1324 (11th Cir. 2001).

Accordingly, it is **ORDERED**:

Plaintiff's motion for leave to file an amended complaint (Doc. 6) is **GRANTED** to the extent that the court has considered the allegations in Plaintiff's amended complaint (Doc. 7).

And it is respectfully **RECOMMENDED**:

1. That pursuant to 28 U.S.C. § 1915(g), this cause be **DISMISSED without prejudice** to Plaintiff's initiating a new cause of action accompanied by payment of the $350.00 filing fee in its entirety.

2. That all other pending motions be **DENIED as moot**.

At Pensacola, Florida, this 14th day of April 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**